Zoch v. Saul is next on our agenda for this session. Mr. Schultz. May it please the Court, Your Honors, Barry Schultz on behalf of the appellant Chick Zoch. In this case, the ALJ's evaluation of the claimant's objective complaints is patently wrong and should be reversed. The ALJ relies primarily on a form that the claimant filled out for the administration, Exhibit 4E, Bonded Pages, starting at page, I believe, 287 of the administrative record. The ALJ summarizes Ms. Zoch's activities from that form. However, the ALJ mischaracterizes the claimant's activities and leaves out the myriad of restrictions and qualifications that she has in performing almost any of her daily activities. And then at, that's at page 21 of the administrative record, the last full paragraph on the page of the ALJ's decision. Then on page 22 of the administrative record, the first full paragraph, the ALJ refers back to his summary of the claimant's activities and says that she admitted certain abilities and therefore the ALJ's residual functional capacity assessment is supported in the record. But any reasonable review of Exhibit 4E shows that in fact, the claimant did not really admit certain abilities, but what she did was over and over and over again, express how difficult it was for her to engage in virtually any activity. When did Ms. Zoch fill out Exhibit 4E? I have to look at that page, Your Honor. Unfortunately, for the date she put her birthday, she doesn't indicate on there when she filled it out. I assume that she would not have filled it out since it's an administration form until after she applied. That's correct. And one of the issues that I guess I have in this case is that, as I understand it, this is only for disability insurance benefits, not supplemental security income. That's correct. And her date last insured was, what, roughly a year and a half or so before her application. Yes, that's also correct. So I guess my question is, how reliable is 4E as an indication of her condition at a relevant time? Well, during the hearing, the ALJ specifically continued to refer the claimant back to that date of 2011 through December 31st of 2013, and the ALJ specifically went through quite a few of the items on Exhibit 4E, verifying with Ms. Zoch that those were her activities at the time prior to the date last insured. So I think that we know from the record that these were the activities that she could engage in and the problems she had at that time. Thank you. Just as an example, one of the things the ALJ says in summarizing the evidence is that the claimant could perform a personal hygiene and grooming with minimal difficulty. But I'll look at page 288 of the record in the form. Under personal care, it says, explain how your illness affects your ability to, and then it lists a number of things for personal care. Under dress, the claimant said, it's very painful to dress. I can't bend or twist the way you need to. Some days I need help. A lot of the time I just don't, meaning don't get dressed. Bathe. I'm embarrassed to say I don't bathe every day. It's very difficult. And then the same thing for hair care and shaving. It's very difficult. She doesn't do those things very often. Even using the bathroom, it was difficult for her to sit down and to stand up. And then it says other, and the claimant said, all of these tags are very painful and it takes me a while to recover from them. So how the ALJ could characterize those activities as being performed with minimal difficulty when in fact, the form explains that there was significant difficulties and many, and often she didn't engage in any of those activities. Similarly, the ALJ found that the claimant, he just listed the things that she could do. She could go shopping. She did laundry. She made simple meals. But in the form and in her testimony, the claimant said she would go shopping maybe once a week for 15 minutes at most. If there were more items that were needed, someone had to go for her. She did laundry once a week, but it was very painful. She could only make a simple meal that took five minutes, a sandwich or a microwave or a salad. She couldn't cut up food because her hands hurt. She couldn't open jars. She couldn't open cans. So again, the ALJ just looked at the bare bones of the things she did without considering the fact that she could barely do any of those activities or was in significant pain or could only do them with breaks or for short periods of time. And because the ALJ seemed to rely on this exhibit so significantly, I think by itself that error warrants reversal. In addition, the ALJ erred in the residual functional capacity assessment. According to Social Security Ruling 96-8P, under the section called Narrative Discussion Requirements, it states, quote, the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, close quote. And then it says the ALJ has to cite specific facts. Well, in this case, all the evidence supports that the claimant was as limited in sitting as she was in standing and walking. The claimant testified she could sit for only 15 minutes and stand for only 15 minutes. Her treating doctor, Dr. Peluska, said she needed frequent position changes and could not sit or stand or walk for prolonged periods of time. The other three doctors who submitted reports after the date last insured, but also gave opinions, said the exact same thing. And even the state agency doctor who found the claimant could do more, but he also found that the claimant was equally limited or not limited in sitting as in standing or walking. And yet somehow the ALJ took the evidence in this case and without explanation found that the claimant could only stand and walk for two hours a day, a very significant limitation, but that she could sit for six hours a day. The ALJ did not cite any evidence. It did not cite any activities that the claimant engaged in that required her to sit for significant periods of time other than in her recliner, which one can't do at work or on a job. There is significant objective evidence that the claimant suffers from severe facet arthritis in her lower lumbar spine, and that by itself could cause significant limits in sitting. Though at a minimum, the ALJ had to explain why he was rejecting the claimant's testimony and her treating doctor's assessment concerning her ability to sit. The ALJ's decision is confusing. It says he gives significant weight to Dr. Robinson's opinion, but then the ALJ actually rejects Dr. Robinson's opinion on how long the claimant can stand and walk, that she has no limitations in using her hands. The ALJ found limitations in lifting and carrying. So the ALJ didn't actually adopt most of Dr. Robinson's opinion. And the ALJ says he gives Dr. Robinson's opinion because it's consistent with the treating source evidence, as well as with the claimant's complaints. But of course, Dr. Robinson's opinion is completely inconsistent with the claimant's complaints and with the treating source opinions. On these basis, the appellant requests that this court reverse the decision of the administrative lie judge. Thank you. Thank you, Mr. Schultz. Ms. Siegel. Good morning, Your Honor. My name is Catherine Siegel. I represent the Commissioner of Social Security in this case. Mr. Schultz has stated that the ALJ relied primarily on one exhibit to make the symptom evaluation findings, and that's just simply not correct. The ALJ relied on a variety of factors to make the symptom evaluation finding here and determine what impact the claimant's symptoms had on her residual functional capacity. First of all, the ALJ looked to what the claimant said about her limits due to symptoms. She said she had a great deal of pain, and it limited her to an extreme amount, 15 minutes only of sitting, 15 minutes only of standing, and 15 minutes only of walking at a time before she had unbearable pain. This is a pretty extreme restriction. So the ALJ looked to see if there was corroborating medical evidence that would support such extreme limits, and he found that there weren't. He relied specifically on medical findings from a primary care physician, Dr. Lee, and from an orthopedic surgeon, Dr. Harms. Dr. Lee and Dr. Harms found that the claimant walked with a normal and unassisted gait, which would seem to contradict her statements about her extreme walking limits. She had full ranges of back motion, and she had normal muscle strength testing in her legs, and she also showed no pressure on her spinal nerves in the magnetic resonance imaging scans that Dr. Harms and Dr. Rauther both reviewed. Dr. Rauther is the claimant's pain specialist, and Dr. Harms is the orthopedic surgeon. These are important findings to consider because they go to the degree of limitation. The ALJ here did not discount the claimant's pain completely. Rather, the ALJ found it was corroborated to the degree that she could do sedentary work but that she was not completely disabled by it. The other thing the ALJ considered in addition to the… Yes? I'm sorry. What supports the ALJ's determination that she could sit for six hours a day, especially in light of her testimony that she couldn't sit for more than 15 minutes? We have a medical opinion from Dr. Robinson, who is a state agency physician who reviewed the record in July of 2015. He reviewed all of the important evidence that related to the claimant's condition from her onset date that she alleged of September 2011 until the date last insured for disability benefits of December 31st, 2013. He makes that very clear in the record that that's the period he's directing his attention to. Dr. Robinson found the claimant could perform six hours of sitting and didn't have any restrictions regarding changing positions. There was no restriction added for changing positions. That's the primary support for the sitting restriction that the ALJ gave. I'd like to point out that the claimant's attorney is incorrect that the ALJ de facto rejected Dr. Robinson's opinion. He did not. He gave a significant weight. The fact that Dr. Robinson found that the claimant could stand for six hours does not make it inconsistent with the ALJ's decision that the claimant could stand for two hours. Because if you can stand for six hours, you certainly can stand for two hours. Likewise, regarding the hand limits, Dr. Robinson reviewed the record and found that the claimant had no limits on handling or manipulation and specifically found, answered the question, are there any manipulative limits? The doctor said no. Now, the ALJ here found frequent handling abilities. If you have no manipulative limits, no handling limits, you certainly can do frequent handling. Those findings from Dr. Robinson clearly support the ALJ's decision here. We have a medical source opinion that supports the residual functional capacity finding and that's significant evidence, that substantial evidence that would support the ALJ's decision. Regarding the symptom evaluation, the ALJ also considered the type of treatment that the claimant got. One of the things that he noted was that the claimant had conservative treatment, that the doctors who reviewed her magnetic resonance imaging scans found that there wasn't any basis for surgery. There was no impingement on the nerve root and there wasn't any basis for doing surgery to correct that. So, there wasn't, she had a large spinal canal and even when she had some degenerative spurs and bulging, it didn't actually press on her nerve root. So, that would be another indicator that her pain was not in a disabling degree. And then we also have inconsistencies in the record regarding her activities. While the claimant did state that she had very limited abilities and activities, she also told her pain specialist when he asked about her daily activities that she was able to perform them okay. And if, in fact, she had such extreme limits, you would think that she would tell the person who was treating her pain. She didn't. She said that it was okay. And that was during the period at issue. That was in December of 2013 that she told him that. And at that same appointment, Dr. Rauner measured her ability to walk. He noted that she had a fairly normal gait and did not walk with an assistive device even though the claimant complained about having limited abilities in that area. The other thing she complained about was weakness in her arms and legs. And when Dr. Rauner measured that objectively, he found no weakness. He found five out of five normal muscle strength. And that, again, is December 2013, which is right at the end of the insured period here. Those are all things that the ALJ considered when deciding whether to credit the extent of her symptoms in determining what the impact of those symptoms were on her functioning. And here, the ALJ limited the claimant to a range of sedentary work, which is the lowest level of functional capacity that one can have and still work. So the ALJ clearly considered her complaints, weighed them against the record evidence, and reasonably came to his decision. And here, the ALJ provided enough of an explanation that the court can defer to his symptom evaluation findings. He only had to produce some evidence in support of his symptom evaluation findings in order for the court to defer to them. And as long as they were not patently wrong, the court may defer to them. He clearly provided enough evidence for the court to defer to his findings. I ask that the court affirm the commissioner's decision and find that she was not disabled. Thank you, Ms. Siegel. Anything further, Mr. Schultz? Yes, a couple of things. First, if the court looked at page 461 of the administrative record, Dr. Harms, the orthopedic surgeon, specifically says that, yeah, that surgery actually might end up hurting Ms. Oxlow, she doesn't need surgery, but that her degenerative disc disease and her bulging discs could cause the pain and stiffness and soreness that she experienced. And in this court, in Moss v. Astros, specifically recognizes that you don't have to have a neurological basis for your pain if you have an orthopedic basis for your pain. If Dr. Robinson's opinion, per the government, is the main reason that support for the ALJ's finding the claimant can sit for six hours a day, that really is no support because the ALJ didn't find that the claimant could stand and walk for six hours, but two hours. That had to be based on evidence. The ALJ doesn't explain why then, when all the evidence shows the claimant has the same limits in standing, walking, and in sitting, that the ALJ found her unlimited in her ability to sit. And the government doesn't explain how the ALJ met the requirements of Social Security Ruling 96-8P. Thank you, Your Honors. Thank you, Mr. Schultz. The case is taken under advisement.